IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JESSICA E.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 3:23-cv-0745-MK

OPINION AND ORDER

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Jessica E seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to allowing a Magistrate Judge to enter final orders and judgment per the Federal Rule of Civil Procedure 73

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

1 – OPINION AND ORDER

and 28 U.S.C. § 636(c). *See* ECF No. 3. For the following reasons, the Commissioner's final decision is AFFIRMED.

## PROCEDURAL BACKGROUND

Before Plaintiff's present applications, Plaintiff was found disabled for a closed period from May 2004 through August 2007. *See* Tr.[2] 996–1009. Plaintiff filed her current DIB application in January 2015 and SSI application in February 2015. Tr. 734. Plaintiff alleged a disability onset date of September 5, 2014. *Id.* Plaintiff's claims were denied by an administrative law judge ("ALJ") on November 1, 2017. Tr. 746. Plaintiff timely appealed the ALJ's decision, and on April 30, 2020, this Court remanded the case for further proceedings. Tr. 2423. Specifically, the ALJ was instructed to "(1) allow a medical expert to opine as to Plaintiff's functional limitations after reviewing all of the medical evidence of record; (2) conduct a de novo review of the medical evidence in light of the medical expert's opinion; (3) accept or provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony; and (4) conduct any further necessary proceedings." Tr. 2423.

On remand, the ALJ conducted additional hearings on October 22, 2020, and February 9, 2021. Tr. 2206, 2179. Plaintiff's claims were ultimately denied for the second time on March 29, 2021. Tr. 2169. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 2139. This appeal followed.

## FACTUAL BACKGROUND

Born in 1975, Plaintiff was 39 years old on her alleged disability onset date. Tr. 140. Plaintiff left school in the 11th grade and later obtained a GED. Tr. 922, 2087. Plaintiff has past

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

work experience as a cashier and as a truck driver. Tr. 922–23, 1282. She alleges disability based on the effects of her cerebrovascular accident ("CVA")[3]; migraines; vertigo; mental health conditions; and plantar fasciitis. Tr. 737, 1184–1207.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[3] In 2004, Plaintiff sustained several small strokes of unknown etiology. Tr. 820.

3 – OPINION AND ORDER

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f),

4 – OPINION AND ORDER

416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act but had engaged in substantial gainful activity between April 2016 and March 2017. Tr. 2156. The ALJ found, however, that there was a continuous 12-month period in which Plaintiff did not engage in substantial gainful activity, and the remainder of her decision addressed that period. Tr. 2157.

At step two, the ALJ found that Plaintiff had the following severe impairments: status post cerebrovascular accident (CVA); migraines; positional vertigo; neurocognitive disorder, major depressive disorder; post-traumatic stress disorder (PTSD), and panic disorder. Tr. 2157.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. Tr. 2158. The ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

> [S]he can lift, carry, push, and pull 25 pounds occasionally and 20 pounds frequently; can stand and walk six hours total in an eight-hour workday; can sit six hours total in an eight-hour workday; can frequently climb ramps and stairs; can occasionally climb ladders, ropes, and scaffolds; can occasionally crouch; should avoid concentrated exposure to hazards; has sufficient concentration, persistence, and pace to complete simple, routine tasks in two-hour increments for a normal workday and workweek with normal breaks; should receive instruction in written format; would work best independently but can work with a small group of coworkers on an occasional basis; should be in a workplace with simple and few changes in routine.

Tr. 2160.

At step four, the ALJ found that the Plaintiff was unable to perform any past relevant work. Tr. 2168. At step five, the ALJ found that, in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite her impairments, including office helper, cleaner

housekeeper, and routing clerk. Tr. 2168-69. Thus, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Act. Tr. 2169.

## DISCUSSION

Plaintiff argues that the ALJ committed several reversible errors, including failing to craft an RFC that properly accounted for her limitations, improperly relying on a vocational expert's testimony at step five, and failing to comply with this Court's prior instruction regarding Plaintiff's symptom testimony. Pl. Br. at 3, 16, 19.

## I.   The RFC

The RFC is the most a person can do in light of their physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. An ALJ is responsible for determining a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." *Id.*; SSR 96-8p, *available at* 1996 WL 374184. The RFC is used at step four of the sequential analysis to determine if a claimant can perform past relevant work and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a), 416.920(a).

An ALJ may rely on the testimony of a vocational expert ("VE") to determine whether a claimant can perform past relevant work at step four or other work in the national or regional economy at step five. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163–65. The Court should uphold step four and five determinations "if the ALJ applied the proper legal standard and

his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

At issue in this case is the ALJ's translation of Plaintiff's limitations into concrete restrictions within the RFC. To start, the ALJ found Plaintiff had a moderate limitation in understanding, remembering, and applying information. Tr. 2158. The ALJ, citing the agency doctors' opinions, explained that although Plaintiff was markedly limited in understanding and remembering detailed information, she was not limited in understanding and remembering simple instructions, work procedures, and locations. *Id*., citing Tr. 1020-22. Additionally, in accordance with the agency doctors' findings, the ALJ concluded Plaintiff was moderately limited in her ability to interact and get along with others. Tr. 2159. The ALJ noted that although Plaintiff reported having difficulty getting along with others, she denied having problems with authority figures and denied having a history of losing work because of difficulty getting along with others. *Id*. Thus, the ALJ determined moderate limitations were warranted in understanding, remembering, and applying information and in interacting and getting along with others.

    **a.  Limitation to simple information**

An ALJ's hypothetical to a vocational expert must accurately set forth all of a claimant's credited limitations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). However, the Court may affirm if the ALJ's failure to include all of the claimant's limitations was harmless. *See, e.g., Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (reviewing for harmless error). "An error is harmless only if it is 'inconsequential to the ultimate

7 – OPINION AND ORDER

nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

Plaintiff alleges error because RFC restrictions to "simple, routine tasks" and "receiv[ing] instruction in written format" do not address her limitation to "simple information." Tr. 2160; Pl. Br. at 8-9. Plaintiff argues that limiting the types of tasks she can perform and the format in which instructions are conveyed does not address the complexity of the information she would be required to process. Pl. Br. at 8. According to Plaintiff, she would "have difficulty receiving every kind or type of information, and in whatever form," and therefore, a limitation to simple information was incorrectly omitted from her RFC. Pl. Br. at 9. Plaintiff thus contends that this omission resulted in an erroneous RFC and hypothetical to the VE.

The Court agrees that omitting the limitation to "simple information" without explanation amounts to legal error. The Commissioner argues that the limitation to simple information was "considered and addressed" in the functional limitations to simple, routine tasks and receiving instructions in written format. Def. Br. at 6. However, the agency doctors' opinions make it clear that Plaintiff's limitation to "understand and recall simple information" and her limitation to complete "simple, routine tasks," are separate limitations. *See* Tr. 1057. The limitations are even classified separately in the agency doctors' report. For example, under the heading "[r]ate the individual's understanding and memory limitations, the agency doctors stated that while Plaintiff can "understand and recall simple information," she cannot "remember detailed or complex information." Tr. 1057; whereas, under the heading "[r]ate the individual's sustained concentration and persistence limitations," the agency doctors state that Plaintiff "is able to maintain attention, concentration, persistence, and pace for simple routine tasks." It is clear to the Court that, while memory and understanding may have some overlap with concentration,

persistence, and pace, they are not the same. Therefore, the restrictions to simple tasks and written instructions in the hypothetical to the VE do not address the level of complexity of instructions that Plaintiff is capable of understanding. Thus, the ALJ erred. As explained below, however, the ALJ's error is ultimately harmless.

The ALJ's failure to include a limitation to simple information in the hypothetical may have resulted in the VE offering representative jobs that exceed Plaintiff's reasoning level. For example, in *Leach v. Kijakazi*, 70 F.4th 1251 (9th Cir. 2023), the ALJ omitted the word "short" from the limitation to "short, simple, instructions" in the hypothetical to the VE. Based on the hypothetical, the VE offered three representative jobs, all with a reasoning level of two. Jobs with reasoning level one only require an ability to "apply commonsense understanding to carry out simple one- or two-step instructions," whereas jobs with reasoning level two require an ability to "apply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions." *Leach*, 70 F.4th at 1256 (emphasis added). In that case, the Court could not conclude whether someone with limitations to short, simple instructions could perform the three exemplary jobs, and the case was remanded for further proceedings.

In this case, as in *Leach*, it is unclear whether Plaintiff would be capable of performing jobs with reasoning level two because of limitations in her ability to understand and remember detailed information. This case, however, is distinguishable from *Leach* because the VE in this case provided a representative occupation requiring only reasoning level one: cleaner housekeeper. Moreover, the cleaner housekeeper position accounts for 219,000 jobs in the national economy, which exceeds the threshold for existing in significant numbers. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) (25,000 jobs in the national economy presented a close call but is significant). Consequently, because the VE provided an exemplary

9 – OPINION AND ORDER

job that accounts for Plaintiff's limitations at reasoning level one and exists in significant numbers in the national economy, the Court concludes that the ALJ's error was harmless because it was inconsequential to the ultimate non-disability determination. *Lambert,* 980 F.3d at 1278. Ultimately, the ALJ's error is harmless because the VE provided jobs that account for the Plaintiff's limitation to simple information that also exist in significant numbers in the economy.

### b. Limitation to superficial interactions

Plaintiff next argues the ALJ erred by failing to include a limitation to only "superficial" interactions with coworkers, supervisors, and the public in the RFC. According to Plaintiff, the ALJ failed to include the limitation to only superficial interactions in the written RFC, and thus, remand is warranted. But as Plaintiff acknowledged, the ALJ included the limitation to superficial contact in the hypothetical to the VE during the hearing.[4] Pl. Br. at 9. The ALJ stated and clarified the superficial contact limitation several times to be sure the VE fully understood the scope of the limitation. *See* Tr. 2194, 2195, 2196, 2199. The VE then made recommendations that accounted for the superficial interaction limitation. As such, any error in failing to include the superficial interaction limitation in the written RFC is inconsequential, as the VE was given an accurate summary of Plaintiff's limitations upon which his testimony is based. *See Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023) (stating that when an ALJ "inaccurately summarizes a claimant's limitations, we ordinarily must reverse and remand . . . by contrast, [when] an ALJ accurately summarizes a claimant's limitations, we ordinarily must affirm").

---

[4] Plaintiff advanced a separate claim of error that the ALJ failed to provide any interaction limitations for supervisors. Pl. Br. at 5-6. However, this argument is undeveloped and in any event, the ALJ included supervisors in the superficial contact limitation in her hypothetical to the VE. *See* Tr. 2195, 2196, 2199.

10 – OPINION AND ORDER

### c. Limitation to small groups of coworkers

Finally, Plaintiff argues the ALJ erred by failing to specify what constitutes a "small group" of coworkers. This argument is unavailing for several reasons. To start, Plaintiff offers no caselaw or statutory support for her assertion that the failure to quantify the exact boundaries of what number constitutes a "small group" amounts to legal error. Instead, Plaintiff argues that the VE "interpreted 'a small group' of coworkers as not being restrictive, thereby allowing [Plaintiff] to work with large numbers of coworkers." Pl. Br. at 4. According to Plaintiff, the VE's flawed interpretation resulted in representative jobs that require extensive contact with coworkers and the public. Pl. Br. at 4-5. Plaintiff claims the ALJ erred in relying on VE testimony at step five by failing to reconcile conflicts between the VE's testimony and the DOT. Pl. Br. at 17. Specifically, Plaintiff claims that the jobs identified by the VE at step five conflicted with the RFC limitation to occasionally working with a small group of coworkers. Plaintiff relies on *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017), arguing that "our common experience" confirms the jobs cited by the VE exceed the limitations proffered included in the RFC. Pl. Br. at 17. In *Lamear*, the Ninth Circuit found the ALJ was required to ask the VE to reconcile an apparent conflict between a person with limitations in his ability to handle, finger, and feel with his left hand, and representative jobs that required his being able to handle, finger and reach for as much as two-thirds of the workday. According to Plaintiff, this case is analogous to *Lamear* because the "office helper job involves extensive involvement with coworkers," and the cleaner-housekeeper is required to "render personal assistance to patrons." Pl. Br. at 18. For the reasons stated below, this argument is unavailing.

In *Lamear,* the court noted, an ALJ's duty to inquire further into conflicts between a VE's testimony and the DOT, is triggered only when conflicts are obvious and apparent.

11 – OPINION AND ORDER

*Lamear*, 865 F.3d at 1205. In this case, there is no obvious or apparent conflict between the VE's testimony and the DOT. As the Commissioner points out, the DOT descriptions for the three jobs proposed by the VE are consistent with limitations to "both superficial and minimal interpersonal interaction." Def. Br. at 8. For example, cleaner housekeepers and routing clerks are both categorized as functional level 8, the lowest rating possible for interacting with people; office helpers are categorized as functional level 6, but interacting with people is still considered "not significant." *See* DOT Appendix B - Explanation of Data, People, and Things, 1991 WL 688701; Office Helper DICOT 239.567-010 (G.P.O.), 1991 WL 672232. Moreover, as stated in *Lamear*, in order to avoid appeals, an ALJ should ordinarily ask the VE to explain why there is no conflict between the DOT and a claimant's RFC, which is precisely what the ALJ did here. *Lamear*, 865 F.3d at 1206; Tr. 2198. The ALJ thus did not err in relying on the VE's testimony at step five.

## II.     This Court's prior instructions to the ALJ on remand

This Court's prior ruling instructed that on remand, the ALJ must "accept or provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony." Tr. 2423. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v.*

*Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character." It requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ found Plaintiff's testimony as to the severity of her symptoms was inconsistent with the evidence in the record. Tr. 2163. The ALJ stated that it is "reasonable to infer from the evidence that the claimant is capable of performing and sustaining work activities at a modified light exertional level with nonexertional limitations." Tr. 2161. To support her conclusion, the ALJ cited to Plaintiff's routine conservative medical treatment, activities of daily living, improved symptoms with treatment, and lack of objective medical evidence.

The ALJ also pointed to treatment notes indicating that Plaintiff's symptoms improved with treatment, including a note from July 2020 in which Plaintiff attested to "feeling great." Id., citing Tr. 3069, 3109, 3225, 3597.

/ / /

/ / /

13 – OPINION AND ORDER

### a. Treatment history inconsistent with alleged symptom severity

The ALJ cited Plaintiff's treatment history for headaches and vertigo to support discounting Plaintiff's symptom testimony. Tr. 2161. A claimant's treatment record is relevant evidence that ALJs should consider when evaluating subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). Treatment records, as well as the "type, dosage, effectiveness, and side effects of any medication," are appropriate factors for an ALJ to consider in assessing a claimant's subjective symptom testimony. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Evidence of a favorable response to conservative treatment can undermine a claimant's report of disabling pain. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

The ALJ noted Plaintiff did not report any increase in migraine symptoms or frequency until a November 12, 2015, visit with her primary care doctor. Tr. 2161, citing Tr. 2021. The ALJ also pointed out that Plaintiff left a psychological exam on November 10, 2015, alleging a migraine, and later told the examining psychologist she had "received emergency treatment and was assessed with multiple strokes" upon leaving the exam. Tr. 2161, citing Tr. 1944-45. However, the ALJ stated that there were no medical records showing subsequent emergent care for migraines, nor is there evidence of any new stroke occurrences anywhere in the record. Tr. 2161. The ALJ noted that Plaintiff's complaints of migraines were infrequent until early 2017. Tr. 2162. In March 2017, the ALJ cited records showing Plaintiff's migraines had "improved overall," but in May 2017, she stopped taking her medication because she was concerned it may cause eye problems, despite being told this was unlikely. *Id*. The ALJ also pointed out that in January 2018, although Plaintiff reported only a few headache-free days a month, the majority of

her medical appointments from 2018 through 2020 show Plaintiff denies both headache and dizziness. *Id*. citing Tr. 2968, 3109, 3223, 3262, 3298, 3338, 3426, 3374, 3497, 3550.

Although Plaintiff complained of debilitating back pain, the ALJ cited treatment records diagnosing only "strain of muscle, fascia, and tendon of the lower back" a Tr. 2164, citing Tr. 2756. An orthopedic examination after a work accident found only mild degenerative changes to Plaintiff's lumbar spine, and no strength or sensory deficits. Tr. 2164, citing Tr. 2882-83. Additionally, the ALJ noted subsequent treatment notes reported improvements in the frequency and severity of Plaintiff's pain. Tr. 2164, citing Tr. 2933, 3069.

Upon review, the ALJ's conclusions are a reasonable reading of the record. To start, ALJ may discount testimony based on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). For example, on November 10, 2015, Plaintiff complained of debilitating migraines to the extent that she left in the middle of a consultative psychological exam to seek emergent care. Tr. 1945. However, there is no record of her seeking any medical treatment for worsening migraines until an appointment with her primary care provider on November 12, 2015, two days after leaving the consultative exam. Tr. 2021. Thereafter, the record shows few complaints of migraines until early 2017. *See, e.g.*, Tr. 2017, 2012, 2007, 2003, 1998, 1995, 1990, 1986, 1981, 1975. Plaintiff reported experiencing relief when taking Topimirate but in May 2017, reported discontinuing the medication due to concerns it may cause eye problems. Tr. 2123. Plaintiff reported that she had a "couple of migraines per month" but that she could head them off with tramadol. *Id*. Finally, in April 2019, Plaintiff was switched to a new migraine medication, and thereafter does not complain of migraines, even reporting "feeling great" in July 2020. Tr. 3515, 3597. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

15 – OPINION AND ORDER

2006) (impairments that "can be controlled effectively with medication are not disabling for the purpose of determining eligibility"). The reasoning provided by the ALJ is supported by substantial evidence and thus will not be disturbed.

### b. Activities of daily living

The ALJ cited Plaintiff's activities of daily living to support discounting her symptom testimony. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ first noted that Plaintiff testified she does not do housework or prepare meals but pointed out that testimony conflicted with Plaintiff's function report stating she "was able to prepare simple meals and do housework for as long as needed." Tr. 2163, citing Tr. 929, 1266-67. The ALJ cited Plaintiff's ability to drive, and shop weekly for groceries and animal supplies. Tr. 2163. The ALJ pointed out that, during the relevant period, Plaintiff was able to care for animals, including horses, ducks, and chickens. *Id*. Finally, the ALJ noted Plaintiff was able to work past her alleged onset date, even reaching "substantial gainful activity level for 12 months." Tr. 2164. Plaintiff was still working part-time as of the date of the last hearing, October 22, 2020. Tr. 2266. The ALJ noted that the type of work Plaintiff performed as a cashier would be

precluded by her RFC, meaning her "level of functioning was generally inconsistent with the extent of her alleged symptoms and limitations." *Id*.

Ordinarily, a plaintiff's ability to do housework and prepare simple meals does not amount to substantial evidence the ALJ may rely on to discount Plaintiff's symptom testimony. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). However, when a Plaintiff's daily activities contradict their attested limitations, an ALJ may rely on those inconsistencies to discount Plaintiff's testimony. See *Reddick*, 157 F.3d at 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility). In this case, the ALJ identified a conflict between Plaintiff's testimony that she does not cook or do the dishes anymore, and only vacuums about "once a month," with her written testimony stating she cooks "daily," "sweeps floors, laundry, dishes, feed and water animals" for "as long as it takes to get done. Tr. 966, 1266-67. Additionally, Plaintiff's ability to work throughout the period of alleged disability, despite claims of worsening symptoms, is clear and convincing evidence that her symptoms are not as limiting as alleged. Again, here, it is not the minimal activities that provide substantial evidence on which the ALJ may rely, but the conflict between the attested limitations and the daily activities.

Much of Plaintiff's argument addressing daily activities centers on the ALJ again "improperly citing [her] activities of cleaning horse stalls as a basis to discredit her testimony." Pl. Br. at 19. Although the ALJ again relied on records of Plaintiff mucking out horse stalls to

17 – OPINION AND ORDER

discount Plaintiff's symptom testimony, the ALJ provided additional support for her findings, beyond statements regarding caring for animals and mucking out horse stalls. Had caring for animals been the only basis for rejecting her testimony, such reasoning would again fall far short of the clear and convincing standard. However, the ALJ provided additional clear and convincing reasons for rejecting Plaintiff's symptom testimony, supported by substantial evidence, and her determination is therefore affirmed. *See also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in an ALJ's subjective symptom analysis is harmless where an ALJ provides at least one valid reason for discounting testimony).

In sum, the ALJ's findings are supported by substantial evidence, are a reasonable interpretation of the record, and any errors that may have been committed were ultimately harmless to the disability determination. Therefore, the ALJ's decision must be upheld. *Ford*, 950 F.3d at 1154.

## CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 12th day of July 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge

18 – OPINION AND ORDER